<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL</td></tr>
<tr>
<td>CARLOS M. CABRERA COLÓN<br><br>Recurridos<br><br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO PONCIANA<br><br>Recurrente</td>
<td>KLRA202500188</td>
<td>***Revisión Administrativa***<br>Procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>C-PON-2023-0004674<br><br>Sobre:<br>Ley de Condominios (Ley Núm. 129 del 16 de agosto de 2020)</td>
</tr>
</table>

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de noviembre de 2025.

El Consejo de Titulares del Condominio Ponciana (recurrente o Consejo de Titulares) solicita que revoquemos la *Resolución Sumaria* emitida por el Departamento de Asuntos del Consumidor (DACo) el 23 de enero de 2025, notificada el 24 de enero de 2025, en la que resolvió de manera sumaria la querella número C-PON-2023-0004674 y declaró nula la Asamblea Ordinaria del 26 de agosto de 2023.

Carlos M. Cabrera Colón (recurrido o señor Cabrera Colón), presentó su oposición al recurso. Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

### I

El 25 de septiembre de 2023, el señor Cabrera Colón presentó ante DACo la querella número C-PON-2023-0004674 en la cual impugnó la celebración de la Asamblea Ordinaria del 26 de agosto

de 2023.[1] En síntesis, sostuvo que la referida asamblea es nula porque: (1) no hubo notificación de la convocatoria a todos los titulares en contravención con el Artículo 54 de la Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 *et seq.*, mejor conocida como la Ley de Condominios de Puerto Rico (Ley Núm. 129-2020 o Ley de Condominios); (2) la convocatoria fue notificada por titulares que tienen deuda; (3) no se verificó ni certificó que se notificara la convocatoria a los sesenta (60) titulares; (4) se prepararon y repartieron los proxys en la mesa antes de comenzar la Asamblea Ordinaria, contrario al Art. 51 de la Ley 129-2020, *supra*; (4) los proxys, excepto el enviado por el recurrido, se alegó que se recibió después de las 8:00pm; (5) todos los que votaron son personas con deuda, contrario al Artículo 51 de la Ley Núm. 129-2020, *supra*; (6) nominaron a titulares que adeudan cuotas, contrario al Artículo 53 de la Ley Núm. 129-2020, *supra*. A su vez, en la misma *Querella*, el recurrido acompañó copia de los documentos necesarios para sustentar su posición.[2]

Por su parte, el 17 de octubre de 2023, el Consejo de Titulares presentó *Moción de Desestimación* en la que alegó que la notificación fue enviada a todos los titulares mediante correo electrónico y mensajería directa, conforme al listado vigente del Condominio Ponciana.[3] Además, adujo que la convocatoria fue suscrita por un titular debidamente facultado por la Ley Núm. 129-2020, *supra,* cuya autoridad fue reconocida por el propio Consejo de Titulares y solo fue impugnada por el recurrido, quien carece de legitimación

---

[1] Apéndice II del *Recurso de Revisión*, págs. 13-21.
[2] Apéndice II del *Recurso de Revisión*, págs. 27-122. ((1) Cheque Pago Cuota Mantenimiento Ofic. 202 de septiembre de 2023; (2) Notificación de Convocatoria de 4 de agosto de 2023; (3) Convocatoria Asamblea Ordinaria 25 de agosto de 2023; (4) Acuerdos Asamblea Ordinaria notificada el 4 de septiembre de 2023; (5) Orden DACo 26 de julio de 2023; (6) Resolución DACo de 10 de septiembre de 2020; (7) Escritura Compraventa Ofic. 202 de 24 de julio de 2013; (8) Escritura Matriz Condominio Ponciana de 12 de julio de 1971; (9) Minuta Asamblea Ordinaria de 26 de agosto de 2023).
[3] Apéndice IV del *Recurso de Revisión,* págs. 190-273.

activa y de fundamentos legales válidos para sostener dicha impugnación.

No obstante, el 23 de enero de 2025, notificada el 24 de enero de 2025, el DACo emitió *Resolución Sumaria* sin resolver la *Moción de Desestimación* del recurrente y sin la celebración de una vista en su fondo. Allí, concluyó que la Asamblea Ordinaria del 26 de agosto de 2023 era contraria a las disposiciones de la Ley Núm. 129-2020, *supra*.[4] Esto, ya que en la referida asamblea se permitió la votación de titulares que mantenían deudas en cuotas de mantenimiento, seguro y derrama. De igual forma, sostuvo que las personas que fueron nominadas para conformar la Junta de Directores se encontraban en mora, en violación de la Ley Núm. 129-2020, *supra*. Por último, el DACo estableció las siguientes determinaciones de hechos:

### DETERMINACIONES DE HECHOS

1. La parte querellante Carlos M. Cabrera Colón, es titular de la unidad B (2-B) en el Condominio Ponciana. Adquirió dicha propiedad mediante escritura número treinta y cinco, el 24 de julio de 2013, ante el notario público José Orlando Mercado Gely.

2. El Condominio Ponciana se encuentra sometido al régimen de Propiedad Horizontal mediante escritura pública. Es una estructura de concreto armado de doce (12) pisos, consta de pisos comerciales y residenciales.

3. Como consecuencia del terremoto ocurrido el 7 de enero de 2020 en el área sur de Puerto Rico, el Condominio Ponciana sufrió graves daños estructurales que requirieron el desalojo de todos los titulares por parte de Técnicos y Oficiales de Manejo de Emergencias del Municipio Autónomo de Ponce.

4. Mediante Convocatoria con fecha del 16 de enero de 2020, el presidente de la Junta de Directores convoco al Consejo de Titulares del Condominio Ponciana a una Asamblea Extraordinaria. La misma se convocó para el 23 de enero de 2020 en primera convocatoria y para el 24 de enero de 2020 en segunda convocatoria de ser necesario, en el "Parque de la Abolición", que queda aledaño al condominio. Entre los asuntos a tratar durante la asamblea se encontraron: el pago del seguro master, el pago de las cuotas de mantenimiento, y la presentación y aprobación de contrato de ajustador público para trabajar la reclamación a la aseguradora Multinacional de los daños al edificio ocasionados por el sismo del 7 de enero de 2020. Esta asamblea se llevó a cabo bajo la Ley de Propiedad Horizontal número 129.

---

[4] Apéndice I del *Recurso de Revisión*, págs. 1-12.

5. Durante la asamblea que se celebró el 23 de enero de 2020, y a la que asistieron 30 titulares, se aprobó por mayoría de los presentes el mantener el pago de las cuotas de mantenimiento de conformidad al presupuesto aprobado en la pasada Asamblea Ordinaria. Se acordó establecer vigilancia con guardia de seguridad de seis de la tarde a seis de la mañana. Igualmente, se contrató a la compañía de Ajustadores Públicos Caribbean Adjusters International, para trabajar con el proceso de reclamación a Multinacional Insurance Company, por los daños sufridos en el edificio por el sismo del 7 de enero de 2020. Dichos acuerdos fueron notificados a todos los titulares el 30 de enero de 2020.

6. El día 27 de febrero de 2020, Maricelys Hernández Lamberty presentó la querella número C-San-2020-0007302 en donde solicitó en síntesis que se releve del pago de la cuota de mantenimiento a todo titular residencial a partir del mes de enero de 2020, mientras estén desalojados de sus propiedades por tener daños estructurales. La querella se desestimó debido a que la misma se presentó en exceso de los 30 días que permite la Ley de Condominios.

7. Con anterioridad a la querella que nos ocupa el Consejo de Titulares había sido debidamente convocado para tratar el asunto de la cuota de mantenimiento y hubo una votación a favor de mantener la misma, en la asamblea que se celebró el 23 de enero de 2020.

8. La parte querellante presentó la querella que nos ocupa el 27 de septiembre de 2023.

9. El 4 de agosto de 2023 se notificó la convocatoria de Asamblea Ordinaria la cual se celebró el 26 de agosto de 2023, la querellante presentó la Querella ante este Departamento en el cual invoca la jurisdicción al amparo de la Ley de Condominios número 129 del 16 de agosto de 2020.

10. Los titulares no conformes con la decisión que se tomó en la asamblea que se celebró el día 23 de enero de 2020, convocaron a celebrar una Asamblea Ordinaria el 23 de julio de 2021. Entre otros asuntos a tratar, ratificaría el acuerdo al que se llegó en la Asamblea Extraordinaria de 10 de julio de 2021, no continuar pagando la cuota de mantenimiento.

11. La parte querellante de epígrafe requirió la intervención de DACo para impugnar la Asamblea Ordinaria que se celebró el 26 de agosto de 2023, a las 2:00 pm en los altos del Mesón Sandwiches en la carretera #2 Ponce, PR.

12. El titular o los titulares que convocaron a la Asamblea Ordinaria que se celebró el 23 de julio de 2022, mantenían deuda con el Consejo de Titulares, de mantenimiento, seguro y derrama.

13. Previo a la convocatoria del 4 de agosto de 2023, para la celebración de la Asamblea Ordinaria el 26 de agosto de 2023, se celebró una Asamblea Extraordinaria en la que se aprobó continuar pagando la cuota para costear la seguridad del edificio.

14. Los titulares que convocaron a la Asamblea Ordinaria mantenían dos (2) o más plazos de cuotas, y/o derramas y/o cuotas especiales y/o multas con pago vencido de sesenta (60) días o más, y/o alguna prima vencida del seguro

comunal, por lo que estaban impedidos de convocar a asamblea ordinaria.

15. Además, los miembros de la "Junta de Directores", mantienen deudas de cuotas de mantenimiento del Condominio a la fecha de la Asamblea Ordinaria. Esto contrario al art. 53 que establece que solo podrán ser nominados y elegidos titulares que no adeuden 2 o más plazos de cuotas, entre otros y deberá mantener tal estado en sus cuentas durante el periodo de su incumbencia.

16. Ninguno de los miembros de la "Junta de Directores" cumplió con mantener las cuotas al día, por lo que se encuentran de manera ilegitima en dichos puestos.

17. Durante la celebración de la asamblea se eligió una Junta de Directores compuesta por titulares morosos. Se eligió a María Margarita Rodríguez Nazario como Presidenta, Margarita Márquez como Secretaria, Hipólito Colón Castro como Tesorero, Lorraime Vázquez Maldonado y Maricelys Hernández como Vocal Residencial.

18. Los miembros elegidos a la Junta de Directores en dicha asamblea mantienen deuda con en el condominio.

19. Por ser pertinente para la adjudicación de esta querella, este Departamento toma conocimiento administrativo de las querellas C-SAN-2021-0009396.

20. El 21 de julio de 2021 el querellante presentó la querella C-SAN-2021-0009396 contra la parte querellada, Consejo de Titulares del Condominio Ponciana. La parte querellante solicitó como remedio lo siguiente: 1) impugnar la asamblea extraordinaria que se celebró el 10 de julio de 2021, 2) Los titulares que convocaron a la Asamblea Extraordinaria mantenían deuda con el Consejo de Titulares, de mantenimiento y 3) Se eligió una Junta de Directores compuesta por titulares morosos. 4) Acuerdo al que llegó el Consejo de Titulares, de relevar de 2020, de manera retroactiva.

21. En la Orden de la Resolución de la querella C-SAN-2021-0009396, "Se declara Ha lugar la querella de epígrafe solicitando la impugnación de la Asamblea Extraordinaria del día 10 de julio de 2021 y en su consecuencia se declara nula la misma" y Se Ordena que dentro del plazo de cuarenta y cinco (45) días calendarios, contados a partir de la fecha de la notificación de la presente Resolución, la parte querellada Junta de Directores y Consejo de Titulares del Condominio Ponciana, a través de su presidente en funciones y/o agente administrador convocará a una Asamblea Ordinaria la cual se celebrará en o antes de quince (15) días desde la convocatoria, en la cual el Consejo de Titulares del Condominio Ponciana, determinará a través del voto los asuntos que se presenten en la convocatoria y la misma se constituirá de acuerdo a la Ley de Condominios número 129 del 16 de agosto de 2020".

22. El Consejo de Titulares del Condominio Ponciana es el organismo que por disposición expresa de la Ley de Condominios, es la Autoridad Suprema del Régimen de Propiedad Horizontal y representa el interés colectivo y propietario de este edificio.

23. La Ley de Condominios específicamente indica que ningún titular que adeude tres o más cuotas de mantenimiento en atrasos puede postularse para ser parte de la Junta de Directores. En adición también especifica que será privada de emitir el voto el titular que adeude tres o más cuotas de mantenimiento en atraso. Los titulares que adeuden seguros, derrama y/o multas, igualmente no podrán postularse para puesto alguno en la Junta de Directores ni emitir el voto.

24. Previamente se señaló una vista administrativa para dilucidar la querella de epígrafe para el 19 de julio de 2023, mediante método de videoconferencia. Compareció la parte querellante Carlos Cabrera Colón, en compañía del Lcdo. Roberto Rivera Ruiz. La parte querellada Consejo de Titulares del Condominio Ponciana, compareció María Rodríguez, presidenta de la Junta, en compañía del Lcdo. Emmanuel Vázquez Torres.

25. En dicha reunión se trajo a la atención de las partes que se había presentado a través del sistema electrónico por la parte querellada un escrito intitulado Moción de Desestimación. De otra parte, el Lcdo. Vázquez informó que su cliente le había informado que, en un caso anterior, se había solicitado la inhibición del Juez Administrativo, alegándose algún tipo de vínculo entre el Juez y la parte querellante. El Juez Administrativo aclaró que su único vínculo ha sido el haber presidido vistas donde el querellante ha comparecido tanto como parte, como abogado de una parte, pero no existe ningún otro vínculo con la parte querellante. La vista se suspendió, se le concedió 15 días a la parte querellada para presentar un escrito debidamente fundamentado donde solicite la inhibición del Juez conforme solicitó verbalmente.

En desacuerdo, el 12 de febrero de 2025, el Consejo de Titulares presentó una *Moción de Reconsideración* ante el DACo en la que impugnó las determinaciones de hechos contenidas en la *Resolución Sumaria.*[5] Allí, sostuvo que dicha determinación entraba en conflicto con lo ya adjudicado en el caso civil *Juan Howe v. Asociación* (P02021CV00038), donde se declaró nula una contratación efectuada por la Junta de 2020 y se discutieron hechos relevantes sobre las actuaciones del querellante. Además, el Consejo de Titulares en dicha moción insistieron que existen controversias sustantivas de hechos que impedían la adjudicación sumaria y conforme a la Regla 11 del Reglamento de Procedimientos Adjudicativos del DACo, *infra,* requieren la celebración de una vista en su fondo.[6]

---

[5] Apéndice III del *Recurso de Revisión,* págs. 123-136.
[6] Íd.

En síntesis, el recurrente expuso que los siguientes hechos están en controversia: (1) hecho número 4 y 5 por ambas asambleas haber sido declaradas nulas mediante sentencia del caso PO2021CV00038; (2) hecho número 7 por la asamblea del 23 de enero de 2020 no haber sido convocada y celebrada correctamente, al amparo del caso PO2021CV00038; (3) hecho número 10 al indicar que la Asamblea Ordinaria del 23 de julio de 2022 fue convocada como reacción e inconformidades con la Asamblea de enero de 2020, cuando la razón fue a causa de que se exigen reuniones anuales, al amparo de la Ley Núm. 129-2020, *supra*; (4) hechos números 12, 13, 15, 16, 17, 18, 19 y 20 por carecer de sustento probatorio y resultar ser altamente controvertibles, ya que las certificaciones de deuda son inadmisible bajo la doctrina probatoria de declaraciones *self-serving,* según lo establecido en *Pueblo v. Rosario,* 160 DPR 592 (2003).

Sin embargo, el DACo no tomó acción sobre la *Moción de Reconsideración* dentro del término de quince (15) días establecido en la Sección 3.15 de la Ley Núm. 38-2017, 3 LPRA sec. 9655, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de PR (LPAU), lo que convirtió la *Resolución Sumaria* en una determinación final de la agencia, sujeta a revisión judicial por este Tribunal.

Inconforme, el Consejo de Titulares acude ante nos mediante recurso de *Revisión Judicial* en el cual alega los siguientes errores:

PRIMER ERROR: Erró el DACo al adjudicar sumariamente la querella sin celebrar una vista en su fondo, a pesar de la existencia de hechos sustancialmente controvertidos planteados oportunamente en el expediente, violando con ello la Regla 11 de su Reglamento de Procedimientos Adjudicativos y el debido proceso de ley.

SEGUNDO ERROR: Erró el DACo al acoger como prueba válida y concluyente unas certificaciones de deuda autoexpedidas por el propio querellante, sin atender las impugnaciones formuladas respecto a su validez, imparcialidad y admisibilidad.

TERCER ERROR: Erró el DACo al no adjudicar múltiples controversias sustantivas debidamente planteadas en la Moción de Desestimación y en la Moción de Reconsideración, incluyendo la falta de legitimación del querellante, la legalidad de las actuaciones de la Asamblea, y la incompatibilidad jurídica de la querella con una sentencia

Por su parte, el señor Cabrera Colón presentó *Moción de Desestimación* del recurso de *Revisión Judicial* del recurrente. En específico, aduce que este Tribunal carece de jurisdicción para atender dicho recurso por la controversia ser académica. De igual forma, presentó su *Oposición a la Revisión Judicial* en el cual alega que no se cometieron los errores señalados y nos solicita que se confirme la *Resolución* recurrida.

**II**

**A. Revisión Judicial**

La LPAU, establece un procedimiento uniforme para la revisión judicial de órdenes y resoluciones dictadas por las agencias administrativas de Puerto Rico. En virtud de dicha ley, una parte que haya sido afectada adversamente por una orden o resolución final de una agencia y que haya agotado todos los remedios administrativos disponibles, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de treinta (30) días contados a partir de la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia. Sec. 4.2 de la LPAU, 3 LPRA sec. 9672. Conforme dispone la LPAU, sus disposiciones son aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos a ser revisadas por el Tribunal de Apelaciones mediante recurso de revisión, con excepción de las dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Gobierno de Puerto Rico, y aquellas del Centro de Recaudación de Ingresos Municipales (CRIM) con relación a las

deficiencias, tasaciones e imposiciones contributivas de la Ley sobre la Contribución sobre la Propiedad Mueble e Inmueble. Véase, Sec. 3.7 de la LPAU, 3 LPRA sec. 9671.

Por otra parte, la LPAU faculta a las agencias administrativas a adjudicar los asuntos ante su consideración por medio de una resolución sumaria. Sección 3.7(b) de la LPAU, 3 LPRA sec. 9647(b). En *OCS v. Universal*, 187 DPR 164, 177-178 (2012), nuestro más Alto Foro local reiteró dicha facultad y, además, explicó que cobra eficacia en todo caso, salvo que la ley orgánica de una agencia administrativa en particular disponga lo contrario. El propósito de dicho mecanismo es agilizar el proceso adjudicativo en casos que no planteen hechos esenciales en controversia. Es decir, que nada impide a una agencia efectuar determinada adjudicación administrativa sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y la evidencia documental que surge del expediente señale la corrección de la determinación de la agencia. *Mun. de San Juan v. CRIM,* 178 DPR 163, 179 (2010). Con ello se evita la celebración de una audiencia evidenciaria en circunstancias en que no aportaría ningún elemento meritorio al proceso analítico. J. Echevarría Vargas, Derecho administrativo puertorriqueño, San Juan, Ediciones Situm, 2012, pág. 231. Véase Sección 3.7 de la LPAU, 3 LPRA sec. 9647.

Ahora bien, la resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. Además, la orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o

revisión, según sea el caso. Véase, Sec. 3.14 de la LPAU, 3 LPRA sec. 9654.

## B. Interpretación de las determinaciones administrativas

En lo pertinente, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, dispone que el alcance de la revisión judicial se limita a lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> **Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.** (énfasis nuestro).

Recientemente, en *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 13 (2025) nuestro más Alto Foro local cuestionó si la intención del legislador era eliminar la deferencia de las conclusiones de derecho emitidas por las agencias administrativas, a lo que contestó en la afirmativa. En el mismo caso, se resumió la doctrina que regía en nuestro ordenamiento jurídico, antes del caso resuelto por la Corte Suprema de Estados Unidos de *Loper Bright Enterprises v. Raimondo*, ____ U.S. ____, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

En específico, la norma era que los tribunales apelativos en su función revisora debían otorgar amplia deferencia a las determinaciones administrativas, ya que se presumía que estos organismos tenían la experiencia y pericia para resolver los asuntos a los que han sido delegados. *Vázquez v. Consejo de Titulares, supra,* pág. 13. Pese a que la propia Sección 4.5 de la LPAU, *supra,* es clara al limitar la deferencia judicial en cuestiones de derecho, la noción que permeaba de la deferencia judicial era el de una presunción de corrección difícilmente rebatible. Íd., pág. 25 (Estrella Martínez, opinión de conformidad). No obstante, todo eso cambió, veamos.

En *Loper Bright Enterprises v. Raimondo, supra,* la Corte Suprema de Estados Unidos revocó el precedente de Derecho Administrativo, *Chevron USA v. Natural Res. Def. Council,* 467 US

837 (1984). Allí, resolvió que la deferencia de la *Administrative Procedure Act* (APA)*, 5 U.S.C. 551 *et seq.,*— estatuto que inspiró la creación de la LPAU— era contraria al mandato de los tribunales como intérpretes de la ley. *Vázquez v. Consejo de Titulares, supra,* pág. 14. A su vez, concluyó que la deferencia impuesta en *Chevron* violentaba los principios fundamentales de la APA al limitar a los foros apelativos de revisar toda cuestión de derecho que surgía de la determinación de una agencia. Íd. De igual forma, el foro federal puntualizó que pese al *expertise* de las agencias, los tribunales revisores no pueden adoptar a ciegas las determinaciones de una agencia. Íd., pág. 15.

Así pues, a raíz del referido precedente federal, nuestro más Alto Foro local adoptó la normativa allí contemplada en *Vázquez v. Consejo de Titulares, supra.* De modo que, se avaló una vez más que las determinaciones e interpretaciones de la agencia, aunque merecen consideración y respeto, no equivale a una renuncia de la función revisora de los foros apelativos. Íd., pág. 17. De esa forma, los preceptos contenidos en la Sección 4.5 de la LPAU, *supra,* y la jurisprudencia se armonizan con el mandato legislativo impuesto. Por tanto, será deber de los tribunales el no adoptar una deferencia automática y revisar las conclusiones de derecho en todos sus aspectos. Íd.

### C. Ley de Condominios

Las disposiciones de la Ley Núm. 129-2020, *supra,* rigen en todo inmueble sometido al régimen de propiedad horizontal, independientemente de la fecha en que dicho régimen se constituyó. Art. 46 de la Ley Núm. 129-2020, *supra*; *Con Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403, 414 (2022). Pues, en la escritura se establecerá el Régimen de Propiedad Horizontal de forma clara y precisa el destino y uso de toda área comprendida en el inmueble, excepto que la ley autorice lo contrario. Art. 4 de la Ley Núm. 129-

2020, 31 LPRA sec. 1921c. Una vez fijado dicho destino y uso solo podrá ser variado mediante la forma que expresamente establece la ley.

Nuestra jurisprudencia ha advertido consistentemente la relevancia de la escritura en la que se establece el orden de propiedad horizontal. A esos efectos, el inscribir en el Registro de la Propiedad la escritura matriz se constituye una especie de acuerdo privado que gobierna a los condómines o titulares que se adhieren a su cumplimiento y que obliga a terceros. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 845 (2011). "La escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares, a medida que adquieren sus apartamentos en el régimen". Íd. La Ley de Condominios define los elementos comunes como aquellos que no son susceptibles de propiedad individual por los titulares y que están sujetos a la indivisión forzosa. Art. 3(j) de la Ley Núm. 129-2020, 31 LPRA sec. 1921b.

Como parte de la organización de este régimen se creó el Consejo de Titulares como la autoridad suprema sobre la administración del inmueble. Art. 48 de la Ley Núm. 129-2020, 31 LPRA sec. 1922t; *Vázquez v. Consejo de Titulares, supra,* pág. 4. Este Consejo se compone de ciertos titulares del mismo condominio y su finalidad está en asegurar al mejor funcionamiento del sistema de propiedad horizontal y armonía con los intereses de sus integrantes. *Vázquez v. Consejo de Titulares, supra,* pág. 4; *Bravman, González v. Consejo Titulares, supra,* pág. 860. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de cumplimiento por todos los titulares. Art. 48 de la Ley Núm. 129-2020, *supra.* Ahora bien, estos deben cumplir con todo el conjunto de normas contenidas en la Ley 129-2020, para llevar a cabo, entre otras cosas, reuniones, votaciones y acuerdos. Su

incumplimiento podría conllevar la nulidad de alguna determinación o votación.

Así pues, la representación en las asambleas del Consejo de Titulares la podrán ejercer solamente titulares que sean mayores de edad, que no adeuden tres (3) o más cuotas de mantenimiento, y/o derramas y/o multas vencidas por más de sesenta (60) días, y/o primas del seguro matriz. Art. 51 de la Ley Núm. 129-2020, *supra*, 31 LPRA sec. 1922w. Además, le corresponde a dicho cuerpo elegir, mediante el voto afirmativo de la mayoría, las personas que ocuparán el órgano ejecutivo. Art. 49 de la Ley Núm. 129-2020, *supra*, 31 LPRA sec. 1922u.

El cuerpo directivo del condominio se constituye de un Director o la Junta de Directores perteneciente a la comunidad de titulares. Art. 53 de la Ley Núm. 129-2020, *supra*, 31 LPRA sec. 1922y. No obstante, como parte de este órgano ejecutivo solo podrán serán escogidos "los titulares que no adeuden dos (2) o más plazos de cuotas de mantenimiento, y/o derramas y/o multas de más de sesenta (60) días de vencidas, y/o primas del seguro matriz y además deberá mantener tal estado en sus cuentas durante el período de su incumbencia". Íd. Asimismo, el presidente de dicha Junta deberá notificar a todos los titulares de las acciones tomadas dentro de los treinta (30) días siguientes. Art. 54 de la Ley Núm. 129-2020, *supra*, 31 LPRA sec. 1922z.

Durante las asambleas, cada titular podrá comparecer y tener el derecho a un voto independientemente del número de apartamentos de que es propietario. Art. 51 de la Ley Núm. 129-2020, *supra*. De no comparecer, el titular puede emitir un poder para autorizar su voto, pero este debe ser entregado con un mínimo de veinticuatro (24) horas antes de comenzar la asamblea. Íd. Ahora bien, si adeudan los plazos antes mencionados en cuotas, derramas o multas, estos "quedarán temporalmente privados de ejercer su

derecho al voto, prestar su consentimiento o expresarse en las asambleas del Consejo de Titulares hasta tanto satisfagan la deuda en su totalidad." Íd.

### D. DACo

De ordinario, los tribunales en Puerto Rico poseen jurisdicción general y ostenta autoridad para atender cualquier causa de acción, a menos que no tengan jurisdicción sobre la materia. *Vázquez v. Consejo de Titulares, supra,* pág. 10 (citando a *Rodríguez Rivera v. De León Otaño,* 191 DPR 700 (2014)). No obstante, entre las normas de autolimitación judicial se estableció la doctrina de jurisdicción primaria. Esta consiste en determinar si le corresponde al foro judicial o administrativo la facultad para adjudicar y entender un asunto. *Vázquez v. Consejo de Titulares, supra,* pág. 10. Ahora bien, existen dos (2) tipos de jurisdicción primaria, concurrente y la exclusiva. En la concurrente el pleito puede iniciar en la agencia o tribunal; en la exclusiva la ley establece que el foro administrativo será el único que tendrá jurisdicción iniciar para atender una reclamación. Íd.

En lo aquí pertinente, la misma Ley de Condominio, *supra,* le otorgó a DACo jurisdicción primara exclusiva para atender todo lo relacionado al régimen de Propiedad Horizontal en el que exista por lo menos un apartamento dedicado a vivienda. Art. 66, 31 LPRA sec. 1923k. Por tanto, el DACo tiene jurisdicción primaria exclusiva para atender las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares que podrán ser impugnados. Art. 65, 31 LPRA sec. 1923j. Pese a lo anterior, los tribunales tienen la facultad de revisar los errores de derecho en los que incurra el DACo.

### E. Resolución Sumaria

La Sección 3.7 de la LPAU, *supra,* establece que, salvo disposición en contrario por su ley orgánica, las entidades

administrativas podrán disponer de los asuntos ante su consideración mediante resolución sumaria. 3 LPRA sec. 9647; *OCS v. Universal*, 187 DPR 164, 177 (2012). Esta procede luego que la agencia determine que no es necesario celebrar una vista adjudicativa.

No obstante, la agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que:

> (1) estén presentes hechos materiales o esenciales controvertidos; (2) existen alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede la orden de resolución sumaria del proceso. Sección 3.7 de la LPAU, *supra,* 3 LPRA sec. 9647.

A esos efectos, el DACo, como parte de los poderes conferidos, tiene la facultad de establecer las reglas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como para la adjudicación. Art. 6(g) de la *Ley Núm. 5-1973* (Ley Orgánica del Departamento de Asuntos del Consumidor), según enmendada, 3 LPRA sec. 341e. Así pues, en cumplimiento con su ley orgánica, el DACo aprobó el Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor, Reglamento Núm. 8034 de 13 de julio de 2011. El referido Reglamento, faculta al DACo resolver órdenes y resoluciones de manera sumaria. Regla 11 del Reglamento de DACo, *supra.*

Es decir, el DACo puede sin celebrar una vista administrativa emitir una resolución y ordenar lo que proceda en Derecho. Íd. No obstante, esto únicamente debe ser cuando no surja una controversia real de hechos y luego de que la partes hayan presentado sus planteamientos, y este haber evaluado la evidencia del caso. Íd. De igual forma, si una de las partes solicita reconsideración, el DACo hará una "vista de reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes". Íd.

**III.**

El Consejo de Titulares alega que erró el DACo al adjudicar sumariamente la querella sin celebrar una vista en su fondo, a pesar de la existencia de hechos sustancialmente controvertidos. A su vez, aduce que incidió el DACo al acoger como prueba válida y concluyente unas certificaciones de deuda autoexpedidas, sin atender las impugnaciones formuladas en cuanto a la validez, imparcialidad y admisibilidad. Por último, sostiene que erró el DACo al no adjudicar múltiples controversias sustantivas como la falta de legitimación del querellante, la legalidad de las actuaciones de la Asamblea y la incompatibilidad jurídica de la querella con una sentencia.

En primer lugar, tomamos conocimiento judicial de los casos *Cabrera Colón v. Consejo de Titulares,* KLRA202500078 (29 de abril de 2025) y *Cabrera Colón v. Consejo de Titulares,* KLRA202400695 (10 de marzo de 2025). Allí, los paneles hermanos de este Tribunal resolvieron con las mismas partes de este caso, que el DACo actuó correctamente al decretar por la vía sumaria la nulidad de unas Asambleas. Asimismo, adujeron que el DACo no estaba obligado a celebrar una vista en su fondo ante la solicitud de reconsideración. De igual forma, tomamos conocimiento judicial del caso emitido por el Tribunal de Primera Instancia, *Juan Howe v. Asociación* (P02021CV00038).

Surge del expediente ante nos, que el Consejo de Titulares presentó una *Moción de Desestimación* a la que reiteró que las certificaciones utilizadas por el querellante para alegar morosidad de la Junta electa adolecen de objetividad y confiabilidad, por estas haber sido creadas por el mismo recurrido. Añadió, que la aceptación como prueba sin vista, ni evaluación, contradice las exigencias mínimas del debido proceso. A su vez, sostuvo que dicha determinación entraba en conflicto con lo ya adjudicado en el caso

civil *Juan Howe v. Asociación* (P02021CV00038), donde se declaró nula una contratación efectuada por la Junta de 2020.

El Consejo de Titulares tiene razón. La decisión del foro administrativo es totalmente incompatible con la Sentencia Parcial del caso P0 2021-CV00038. El recurrido pidió la nulidad de la asamblea del 26 de agosto de 2024 y la ilegalidad de la Junta de directores, así como la de las juntas elegidas en el 2021 y en el 2022. El foro administrativo reconoció la validez de la Asamblea Extraordinaria del 23 de enero de 2020, en la que se acordó mantener el pago de las cuotas, establecer vigilancia con guardia de seguridad y la contratación de la compañía de Ajustadores Públicos Caribbean Adjuster International. No obstante, declaró nulas sumariamente (1) la Asamblea Extraordinaria del 10 de julio de 2021, (2) la Asamblea Ordinaria del 23 de julio y 2022 y la Asamblea del 26 de agosto de 2024, en las que se determinó no continuar con el pago de las cuotas de mantenimiento. El foro administrativo declaró la nulidad de esas asambleas, porque fueron convocadas por titulares que adeudaban cuotas de mantenimiento, seguro y derrama. Además, de que la Junta de Directores estaba constituida por titulares morosos, a pesar de que previamente se había aprobado continuar pagando las cuotas. La agencia, tomó conocimiento de la querella C-SAN 2021-0009396 que presentó el recurrido contra el Consejo de Titulares impugnando la asamblea extraordinaria del 10 de julio de 2021, que fue declarada ha lugar.

Las determinaciones de hecho que el DACo adjudicó sumariamente son totalmente contradictorias con las que determinó el TPI en la Sentencia Parcial final y firme dictada el 14 de mayo de 2022, en el Caso P0 2021-CV00038. Los demandantes eran titulares del condominio y demandaron al Consejo de Titulares presidido por la Lcda. Noemi Beltrán y en el que el recurrido era el tesorero. Los demandados solicitaron que se dictara sentencia con

la prueba sometida, excepto los daños. El TPI incorporó e hizo formar parte integral de la sentencia las alegaciones de la Demandada Enmendada referentes al Consejo de Titulares en sus precisos términos y condiciones, excepto a las relacionadas con daños. Por esa razón, dio por hecho las alegaciones siguientes. El nombramiento de la Lcda. Noemi Beltrán Soto como Presidenta Interina y su convocatoria a la Asamblea en la que fue electa Presidenta del Consejo de Titulares eran ilegales. Alegaciones 3-6 de la Demanda Enmendada. Según el TPI fue esa presidenta ilegal quien convocó a la asamblea del 23 de enero de 2020, en la (1) se contrató ilegalmente a la compañía Caribbean Adjuster International para reclamar los daños, sin las tres contrataciones que requiere la ley, (2) se prohibió ilegalmente el voto a titulares por deudas de cuotas de mantenimiento, a pesar de existía una emergencia ocasionada por un terremoto. Alegaciones 20 – 23 de la Demanda Enmendada. La Lcda. Beltrán Soto contrató ilegalmente a los ajustadores cuyos honorarios eran ilegales o irrazonables. Los titulares no han visto, ni se ha desglosado para su conocimiento y aprobación los contratos relacionados a los ajustadores y compañía de ingenieros. Alegaciones 26- 30 de la Demanda Enmendada. Por lo que respecta al recurrido, el TPI determinó que el Lcdo. Cabrera sacó ilegalmente de la función de firma de cheques a Maricelys Hernández y la sustituyó por María del Rosario Zayas Busquet y que tiene serios conflictos de intereses. Determinaciones de hecho 34 y Pag 56.

La resolución recurrida, además es contradictoria con otras determinaciones de hechos en la que el TPI estableció la ilegalidad de las actuaciones del grupo que respaldaba continuar con el pago de las cuotas y la contratación del ajustador, y del que el recurrido era tesorero. El TPI dio por hecho (1) la ilegalidad de la asamblea extraordinaria del 5 de diciembre de 2020, convertida en una

Reunión Informativa, (2) los acuerdos sobre los daños del condominio y (3) la convocatoria a una votación por escrito entre el 12 de diciembre de 2020 al 22 de diciembre de 2020. Alegaciones 40, 43, 44, 45 de la Demanda Enmendada. Igualmente dio por hecho que la Junta demandada a la que pertenece el recurrido (1) culposa y negligentemente no presentó el informe financiero, (2) no ha informado los gastos que pagan ilegalmente,(3) cesaba su autoridad el 16 de septiembre de 2020, fecha en la que también venció el seguro master, (4) dejó a los titulares, sin seguro de responsabilidad pública y sin una cubierta de Directors and Officer, (4) nunca convocó a una Asamblea Ordinaria conforme a derecho, (5) convocó a una Asamblea Extraordinaria ilegal para el 5 de diciembre de 2020, (6) ha seguido actuando sin autoridad legal totalmente fuera del término, (7) se niega a informar a los titulares de sus trabajos y decisiones, (8) ha expedido cheques de las arcas del consejo ilegalmente desde el 7 de enero de 2020 al presente y (9) tienen el control de todas las cuentas. Alegaciones de la Demanda Enmendada 31, 35, 36, 37, 38, 39, 42, 49, 50, 51.

Las incongruencias de la resolución recurrida con las una sentencia final y firme son razones más que suficientes para que el DACo atienda las controversias en una vista administrativa. La agencia deberá considerar la Sentencia Parcial dictada en el caso PO2012CV00038, para evitar una resolución inconsistente con una decisión judicial final y firme. La multiplicidad de querellas sobre el mismo asunto y lo contencioso del caso hacen necesaria una vista en su fondo, para beneficio de los titulares obligados a abandonar sus apartamentos durante años, a sufrir el continuo deterioro de sus propiedades y a seguir pagando sus hipotecas.

**IV**

Por los fundamentos anteriormente expuesto, se revoca la *Resolución Sumaria* recurrida y se devuelve el caso a DACo para la celebración de una vista.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones